The attorneys are going to make a presentation. Please approach the podium and identify yourselves for the record and state the party you represent. My name is Christopher Kopecz and I represent the defendant, Robert Butler. Good morning, my name is Veronica Calderon-Malavian. I represent the people of the state of Illinois. Thank you. 30 minutes we have scattered for this one, 15 minutes for each side, and you may reserve a few minutes, Ms. Kopecz, for your rebuttal. You may proceed. May it please the court, as I said, my name is Christopher Kopecz and I represent the defendant, Robert Butler. I would like to reserve a couple of minutes for rebuttal. The issue in this case is simply whether Officer Shannon's warrantless search of Robert Butler's cell phone violated the Fourth Amendment. The parties here agree that under Riley v. California, a warrant is generally required for an officer to search a cell phone, and there was no warrant here. So the issue is simply whether one of the well-delineated and limited exceptions to the warrant requirement apply, and whether the state has met its burden to show that one of those exceptions applies. We maintain that the state does not meet its burden here. At the outset, I think it's important to clarify a couple of facts because the state's brief is somewhat misleading on this. And the first is that at the time of the search, Butler was not in any sort of grave condition where he couldn't communicate. The evidence is uncontested that he was lucid and communicative at all times. He never lost consciousness during this episode. Officer Shannon was able to speak to Butler before the search of the cell phone. He was able to ask Butler what happened and where the shooting occurred, and Butler was able to respond. Butler was able to speak to the nurses and hospital staff who were treating him. All of that evidence is uncontested in the record. So any idea that Butler was in too great a condition to be able to communicate is contradicted by the record here. The second point that needs to be made is that Shannon was never asked to use Butler's cell phone. It's undisputed that Shannon never asked any hospital staff whether a next of kin or family member had been contacted or should be contacted. Shannon certainly didn't talk to Butler about it. Butler never asked Shannon to use his cell phone or contact anybody. It's also important to note that Shannon himself admits that he did not overhear any request by Butler to contact his sister. So what really happened is that Shannon took it upon himself, without consultation with the hospital staff or Butler, to search Butler's cell phone. And he didn't have any real idea of who he might be looking for or where he might look in the cell phone to find a family member who might be contacted. The state argues that the discovery of these phone records would have been inevitable once they found out that he gave a false story about how he became injured and where he was injured, that they would eventually discover these records anyway. That's not true. The record indicates, Shannon himself testifies, that they did get a search warrant for the phone ultimately. And the basis for that search warrant was the illegally obtained text message. And so sort of elementary Fourth Amendment jurisprudence that you can't use illegally searched, illegally obtained evidence to get a search warrant for that same area. And the fact is that, you know, whether Mr. Butler was a suspect, the state already conceded that at the suppression hearing. The state stipulated that at the time of the search, he was not a suspect. So that shows that there was no sort of inevitable discovery that would have taken place at the time of the search. Correct. Within an hour, he probably would have been, right? There's no shooting at 71st or wherever he said he was shot. And so there's no indication that he was himself a suspect of that shooting that would rise to the level of probable cause. And certainly no suspicion that would rise to the level of probable cause to search the cell phone. Riley made very clear that if you want, if an officer wants to search the cell phone, he needs to have probable cause to search the phone to believe that there's evidence of criminality on the phone. Sure, but they're arguing inevitable discovery. I think that's what Justice House is getting at. Wouldn't they, the way this investigation played out, wouldn't they have eventually searched the cell phone anyways? No, there was no evidence, no reason to believe that there would be evidence on that phone. To this day, there's no reason to think that there would be any evidence related to the shooting of Walt Stubb on that phone, much less evidence that would rise to probable cause. In order, we said a Sixth Circuit case in the brief that talks to counsel. So we have an individual who's been shot, and so the police are going to investigate that. He gives them a story. I don't think it takes the officer particularly long to realize that that story doesn't seem to wash. Right. There is another shooting about, what was it, maybe 15 blocks? I don't know how many blocks it was. Weren't they eventually going to connect these things up? That he would be a suspect or something suspicious, yes. Okay. But the critical issue, and this is where Riley is important, you have to believe that there's evidence that would be found on that cell phone. And here, there's no indication other than the fact that he had a cell phone. That would indicate that there was evidence of the shooting on that cell phone. None, I mean, the state doesn't point to a shred of evidence that says there would be evidence on the cell phone. So, again, we cite to a Sixth Circuit case as illustrative of this, that, you know, if you have evidence that the defendant and the co-defendants are engaged in some sort of conspiracy, and you have evidence that they're communicating by cell phone, that is the sort of thing that you can point to to say, hey, there's probable cause to think that evidence of this crime might be on the cell phone. But here, there's none of that. And the U.S. Supreme Court in Riley says that, you know, the warrant requirement is particularly important because, you know, any imaginative officer can think of some reason that there might be something on a cell phone. And the example they give is, you know, speeding, someone who's pulled over for speeding. You might believe that there's information about the location that could be found on the phone. And so that sort of, like, conspiracy rationale doesn't meet the level of probable cause that's required to search the phone. Riley was very clear about the key privacy interests in a phone, and that require a sort of heavy burden for the government to search a phone. And that burden was not met in this case. Even without the cell phone message, there's a lot of evidence against the defendant. He was in a car which was on the way to see the victim. There was a shootout. Now, we were talking about accountability. Here we have the factors. He's in a situation with the people who were the primary actors, and he's escaping with them. When he attaches himself to those individuals, isn't there a presumption that he is accountable for their actions? Well, as to the issue of harmlessness, because this is a constitutional and preserved issue, the state has the burden here to show that it's harmless beyond a reasonable doubt. And when the trial court itself says that this text message is compelling evidence, the state has a very difficult time meeting that burden. The trial court says that it's compelling evidence. And the text message, at least in the trial court's mind, was evidence showing his accountability. Without this text message, the state's case on accountability becomes much, much weaker because all you really have is his presence with this group of people at the shooting. Butler himself did not have a gun. There's no evidence that he shot anyone. The evidence is pretty much undisputed that only one of the two people, likely the co-defendant Amos, had a gun at the scene. Even if you look to Butler's own statement, he doesn't admit that he knows what sort of plan is going on with his friends at this time. But, you know, the cases give a test of it. They say, well, if you are with individuals, you try to escape, you don't call the police afterwards, you're attaching yourself to the And then he ran and was taken to the hospital where police found him immediately. So that doesn't mean he was dropped off by people who were likely involved. Yes, it sort of threw him out of the car at the hospital. So yes, certainly he was present at the scene. Nobody disputes that. But the state's case for accountability without this text message involving him asking for a pipe, the state's case is much weaker. What we have is something where he's simply present with his acquaintances, with his friends. He's shot and then he runs and there's no evidence linking him to the shooting other than the fact that he was present with the shooter and left with the shooter. So you're not arguing that the case simply goes away. You're simply arguing that the state's case is not as strong. Right. Much, weaker on the issue of accountability. It becomes much closer to mere presence without this text message. And again, it's the state's burden to show harmless beyond a reasonable doubt. So the state can't meet its burden in this case. If this court has no further questions, I'll reserve my further remarks for rebuttal. All right. Thank you. Again, I'm Cook County Assistant State's Attorney, Veronica Calderon-Maladia. The trial court correctly determined that Officer Shannon's conduct was authorized by the community caretaking exception. The trial court believed Officer Shannon's testimony that he was aiding a shooting victim and not conducting an investigation. That credible finding, Your Honors, must be given due deference because it's not against the manifest weight of the evidence and is actually supported by the video of the triage of an area of the hospital. There's no dispute here that Officer Shannon was just a patrol officer. Well, as a legal question, what public safety function was he performing if he was simply calling the relative of the shooting victim? The community caretaking doctrine recognizes that officers can assist those in need. For public safety? To protect public safety? Not always. It could be, you know, helping with a stray dog. It could be other situations, helping a person, you know, fix a flat tire. It doesn't have to be help the general public's public safety. It just cannot be an investigative role. And here, the officer was not taking an investigative role, but he was confronted unexpectedly with a quick evolving emergency situation. He saw a gray Dodge come into the parking way of the hospital and drop off defendant, and that Dodge fled at high rate of speed. Defendant was wounded. He was bleeding profusely. He stated that he was a gunshot victim. Then the video shows the defendant went into the, staggered into the area of the triage, fell immediately to the ground. About 10 to, 10 doctors and nurses came to him. He remained on the ground until he was lifted and placed on a gurney. I'm going to go back to the initial question that Justice House had. Can you just maybe clarify or maybe expound on this public safety? I'm not, I'm not getting it. And maybe I'm just not hearing you. I think I'm stuck on community caretaking. Well, it requires that there not be an investigation, that the officers are engaging in something that would assist people. And certainly notification of a gunshot victim to the family is assisting the family. The defendant at this point is already in the hospital. Correct. Is that correct? And already presumably under some sort of care of hospital personnel. Correct. However, at the time, like I said, when defendant fell to the ground, he was bleeding profusely. When he was lifted up, there was a large puddle of blood. And when they lifted him up, he could barely lift his head. Does that have to do with his need to, what was emergent about the circumstances under which he took that phone and started rifling through? It doesn't have to be like an emergency, the community caretaking. He was clearly in a bad state. He was. Well, it shows that he saw a situation where there was a victim here, he's not a medical doctor, he didn't know if, you know, the defendant would need surgery or survive that night or the next few minutes. What he did know was the defendant was seriously injured and that his family needed to be notified. But the defendant was lucid and could have asked the officer to make the phone call, couldn't he? I would say the video does not support that. It supports that he was unconscious at the time? No, he was not unconscious at the time. Is there any indication in the record that he was not able to communicate to hospital personnel? All the video shows is that everybody was focused on giving him, you know, potential life-saving medical attention. And the officer saw a situation where, you know, that the defendant was seriously injured, that he may not survive or need surgery, and he took it upon himself to take the phone and find some information so he can contact the family. How would the officer know who to contact? Let's assume that he was rightfully in possession of the phone.  He could just, you know, go through the contact list. And on my contact list, I had mom, dad, so, you know, there may be another notification or just anyone, and then he could learn, you know, then the family could be notified. Did he know the defendant's name at that point? No, he did not. Is there anything in the record to indicate that once he came across this message, he eventually notified any family member? No, but at that point in time, Officer Shannon realized that, you know, having the phone may take, because of the incriminating, potentially incriminating text message, may take an investigative turn. And so he stopped pushing the buttons on the phone, contacted the detectives, and who later got a search warrant. So the need to contact this person dissipated at that point? Well, his role as a community caretaker ended there, and Officer Shannon realized that he's not just assisting an injured victim, that this may be a crime, and the defendant may be involved, so he stopped. So the community caretaking needed to be done? He wasn't the one to do it at the time. But even if this court does not accept the trial court's reasoning, the ultimate ruling is still cracker, because there was probable cause. There was probable cause to detain the defendant, to seize his phone, and to search the phone due to exigent circumstances. What were the exigent circumstances? You said that he was pretty badly wounded, had fallen to the ground, not likely to walk out of the hospital, didn't have a weapon on him. No, but the exigent circumstances were that there was still an armed offender at large. And we know that this was not a solo act, that there was at least two shooters, there was two casings found outside of the house, the police knew that witnesses saw two... Aren't there any cases to say that's not enough? Pardon me? Oh, no. First, let's establish that there was probable cause. And when we determine whether there was probable cause, we have to apply the collective knowledge doctrine. And what the police knew collectively at the time was there was a shootout at 89th and Bishop, there was a dead person in the house who probably shot at someone because there were cartridge casings found inside the house near the body. Cartridge casings were also found on the parkway in front of the house. And we know that... Before he went through the cell phone. Before he went through the cell phone. And I'm discussing what the officers collectively knew before the seizure of the phone and search. So your point here is this is probable cause. This is probable cause. Exigent circumstances equals you don't need a warrant. Right. And so at that time, we know that Officer Bibbs, who was a neighbor, heard the shots. So he would have had the right, you're saying, to perform an investigative function at that point. Correct. Objectively, no, that's not what Officer Shannon did, but we're talking Fourth Amendment probable cause. We're talking objectively. But let me just follow up with that. So this individual does not appear at this moment to be a threat to anybody. He's been shot and he's staggering. He's borderline incoherent. He's in the hospital's custody. What was the need at that point to perform the investigative function of going through his cell phone? Okay. What would he have done? I'll establish that there was probable cause as well as the need. Aside from the fact that they knew that this was a shootout, they knew at the time that there was a witness, Officer Bibbs, who saw two suspects running from the scene. She described that both suspects were wearing black. One suspect had darker skin and that the lighter-skinned suspect had a gun. We also know that at this time that the police knew collectively that defendant matched the description and that defendant, you know, collectively knew there was no report of shooting at 71st and Ashland as claimed by defendant, so defendant was likely lying. We also know how he was dropped off and the car fled at a high rate of speed. I mean, I can understand why all this information might want to make a police officer say, I have to talk to that guy right now. I've got to question him and say, you were lying to me. What really happened? Who's your buddy who's on the run? But he went through his cell phone. Why did he have to go through his cell phone at that point? Because in the exigent circumstance, there was, you know, an offender at large with a gun. They knew this was not a solo act. Also, it's reasonable for the officers to infer that the individuals involved were communicating with each other and that they were communicating each other with their phones. The defendant had his phone probably during the shooting because he had it in the hospital. If you could get us to exigent circumstances, we know there's a shooting that occurred and this individual might have been involved in that particular shooting. You have access to his clothes and you maybe searched the clothes for a gun. But exigent circumstances isn't just for the phone. I mean, the highest exigent circumstances potentially say, you know, that there's an armed offender out there. The officers at this point didn't know if this was an isolated incident, if this was the beginning of a shooting spree or a gang war. What they did know was there was an offender out there who just shot at someone who had a gun. And the most effective... You had a gun at the hospital. The offender, the light-skinned offender who fled, who was not captured. They have one of the offenders, one of the potential shooters in the hospital, but they know this was a shootout because Officer Bibbs saw two men fleeing. And the lighter-skinned, which is that defendant, had a gun. And so they know that an offender is out there. And certainly there's exigent circumstances to look at the phone. So there's some expectation that the state has that this defendant would somehow have figured out that you're on to him and I better get to my phone and erase all of the text messages there? No, I mean, it's not the exigent circumstances. I'm not saying exigent circumstances for suppressing evidence or destroying evidence. The exigent circumstances is finding an armed offender who just shot at a house and killed someone. I don't know how more exigent there could be to look at a phone to see when you have a co-conspirator's phone, to see if you can find some information that will help you capture the offender before it gets further away or worse. Before he engages in another shootout. In the Riley case, he discussed a hypothetical scenario where individuals may be still out there and they say, well, suppose officers want to look at the phone and see if the Confederates of the owner of the phone are out. They're not only out there, but maybe heading back to the scene to potentially put the cops in danger. And they say even that's not good enough. So the fact that there's offenders out there, that's not... We have an offender who just committed a homicide and he has more than one co-conspirator. Well, the thing is, if the cops cannot go without a warrant to see if offenders are coming back to attack them, how is the fact that an offender may be out in the wild without any indication that he'd be coming back, how can you get on the phone to address that? I'm not sure of the exact scenario, but here we have, they're not concerned with their own safety, they're concerned with the public. Which is their greatest priority. They're not concerned with their own safety, they're concerned with the public. So in other words, if you can't go on a phone without a warrant to see if armed offenders are coming back to the scene, you're saying that if they're just in the wild, you can go on the phone then. If they're in the wild and not necessarily coming back to the scene, then you can go on the phone. Well, we don't know if they're coming back to the scene. We don't know what's happening. We don't know if this is a shooting spree. So I think that the safety of the public is important here. So the exigent circumstances would apply. However, So you're saying he wasn't actually doing that. What he was actually doing was a community, according to the state, was a community caretaking function to try to find next of kin to notify. But that he could have viewed this completely differently as an emergent situation. Correct. As well, this Court knows that on appeal, this Court could affirm on any basis on the record, and that in assessing probable cause and exigent circumstances, what is at issue is an objective, reasonable officer. But moving on, the phone would have been discovered in this case. The evidence shows that Tiffany Bennett told the police that Marcus Russell, who called to switch the cars from her charger to use her gray Dodge, used defendant's cell number. Okay, so they needed the telephone number. So they would have eventually, with other evidence, linked the phone, that the phone may have more incriminating, you know, some incriminating evidence. So it would have been admissible under the Ineligible Discovery Doctrine. Doesn't that split the theory, though? You wouldn't have gotten a, you had the phone before you got the warrant. Well, I'm sorry. Eventually, they would have identified the defendant's cell phone, and they would have had enough information to obtain a search warrant, and then the text message would have been discovered in a trial. Because it would have been, with all the information the officers, the police knew, there would have been probable cause. Also, the mission of the text was how it must be on a reasonable doubt. Even without the text, there was overwhelming evidence of defendant's guilt. And that evidence includes compelling witness testimony. According to Tiffany Bennett, defendant was with co-defendant and two other men earlier that day when they all drove to McDonald's and switched cars. Again, Tiffany Bennett revealed that defendant's phone was used to call the police. And that's when she was called to make that arrangement for the exchange of cars. Defendant, co-defendant, and the other two men were seen driving away in the Dodge. That same morning, William White saw a greenish Dodge come out of an alley at a slow rate. He then heard the shootout at 89th and Bishop and saw the Dodge again. Then he saw both defendant and co-defendant running down the block getting to the Dodge. He saw the defendant get into the back seat. White also saw that both men were wearing black. He also saw that defendant had a darker complexion and he was wearing a hat. In fact, the video triage confirms that. Defendant was wearing black. He had a black hat. If this was a case where we're questioning the sufficiency of evidence, I think you're correct. This evidence is sufficient. But when we're trying to determine whether or not the admission of this statement was harmless beyond a reasonable doubt, aren't we trying to answer a different question? There is overwhelming proof of defendant's guilt here and therefore the admission of the text wouldn't have been You don't need the text to find him guilty beyond a reasonable doubt. Here's what we're wrestling with. We're wrestling with the transfer where the judge says the thing that pushed him over the edge was this phone message. We're dealing with accountability and with the judge saying I'm depending on this phone message which may or may not be admissible depending on how we rule here, how can we say if we say it shouldn't have been admitted, how can we say beyond a reasonable doubt that the case would have gone a different way? Because there was other compelling evidence. It wasn't the only evidence. In fact, there's no need for the text It was sufficient for conviction. It's not the only thing that rested, that the conviction rested. There was eyewitness testimony that he was involved in the planning through Tiffany Bennett. But counsel, this wasn't a jury trial. This was a bench trial. We have findings of fact. Didn't Judge Lin say that this was the most compelling piece of evidence? He said it was compelling, but I think if you read his account of all his statements, there was other very compelling evidence and even if you remove the text, the existence of the text, there's still overwhelming evidence of defendant's guilt. He lied about where he was shot and it must be remembered that there's also forensic evidence that supports defendant's involvement in the shooting. Was a gunshot residue found on the defendant's person anywhere? No, it was not. Did anyone see the defendant fire a gun? No, but they saw him at the scene. We know that there were three shooters because forensic evidence established that there was a shootout, that two individuals were outside in the parkway. There was one individual, the victim, inside the parkway and there were casings found of two individuals in the casings found in the parkway and casings found by the victim. It's clear that the victim shot at his assailants and defendant was within that area and because he was wounded by the victim. How is that simply not presence? With all the evidence, he planned. He was in the car. He's clearly close. It's reasonable to infer that he was the second shooter because he was there in front of the house and that's where he was shot. So from this evidence, we know that he was involved in the planning. He was present in the shooting. He was shot by the victim and he probably shot at the victim. It could be a reasonable inference. It's beyond a reasonable doubt. It's not beyond any doubt that it's at issue here and certainly there's overwhelming evidence that he was accountable based on obvious acts, even if you don't consider his later admissions. So the text was not necessary and therefore its admission was harmless beyond a reasonable doubt. As to my final point, if this Court does not accept any of my arguments, at most this Court should send it back for an attenuation hearing to determine whether the text was purged from any legality. The hearing should be limited to the issue of the text and not as claimed by defendant to see if more evidence should be suppressed.  The defense counsel made a strategic decision not to suppress defendant's statements at trial. In fact, counsel withdrew a motion to suppress defendant's statements as involuntary prior to trial. And your honors, that's because defendant's statements contained the mitigating factors that supported  withdrew a motion to suppress defendant's statements as involuntary   in line with the second-degree murder finding. Accordingly, this Court should not compel an inquiry to the suppression of additional evidence that even trial counsel did not want suppressed. For these reasons, the people ask this Court to affirm defendant's second-degree murder conviction or, in the alternative, remand it for a limited attenuation hearing. All right. Mr. Kopass, thank you. Thank you, your honors. Sort of work backwards, if I may. The State just made a forfeiture argument about the attenuation hearing. The State itself has apparently forfeited that because in their brief they agreed that this should go back for an attenuation hearing with respect to whether the confession was, you know, could be purged from the taint of the illegality. So that's something that the State is bringing forth just now in this oral argument. With respect to the harmlessness of this, it's important to be clear there is no specific evidence that Butler was involved in planning any of the, planning any shooting during this, during this event. What there is evidence of is that he was present with Marcus Russell and the others when they switched the car, that he knew there was some issue with Russell and maybe Amos being targeted by other gang members, and that he was just supposed to look out for someone and holler if someone came at him. There's no evidence that he knew of any plan to shoot, of any plan to do anything criminal in nature before it happened. All we have is evidence that he was shot and he ran. And his statement on the video, video statement, he's adamant about that, that he did not know about that. And the cops continue to press him on that, and he maintains that he didn't know anything more than he was just supposed to look out for the others. So again, no evidence that he was involved in planning this offense. With respect to the issue of probable cause, I think it's important to remember that in Riley itself, the police had probable cause to arrest the defendants. One of the defendants in Riley was arrested with a drive-by shooting, and the Supreme Court said you still need a warrant with respect to the cell phone that shows that there's going to be evidence on that cell phone. Again, if Riley maintains that in the case of a drive-by shooting, it's difficult to think how here there could be evidence on the cell phone based on the mere fact that he was involved in a shooting and that other people might have been involved. And there has to be some sort of nexus or excuse me, that's what I just said, if the court were to find that this, the state's arguments are sufficient to allow the officer to go into the phone, that really does gut or eviscerate Riley's core holding about the key privacy interests that a person has in the phone. If this court has no further questions, we would ask that you hold us to this conviction and submit this case for your decision. Thank you. The case was well-argued, well-briefed. We enjoyed discussing it with you. There will be taken under advisement and a decision will be issued in due course. Thank you very much.